IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC ALLEN CUMMINGS,<br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner<br>of Social Security,<br>Defendant. | )<br>)<br>)<br>)  1:14-CV-251-TFM<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

July 7, 2015

**I.   Introduction**

Eric Allen Cummings ("Plaintiff") has filed this action for judicial review of the decision of the Acting Commissioner of Social Security, which denied his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403, 1381-1383. Pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 9, 13. The motions have been fully briefed and are ripe for disposition. ECF Nos. 10, 14, 15. For the reasons that follow, the Acting Commissioner's motion will be **GRANTED**, and Plaintiff's motion will be **DENIED**.

**II.   Background**

Plaintiff is a 47-year-old high school graduate with two years of college education. He worked as an auto mechanic, baker's assistant (a job he held for just two weeks), and laborer for Zambelli's Fireworks, but he stopped working for Zambelli's in 2009 because he failed a background check. He hasn't worked since. He alleges that he has been disabled since September 10, 2005, due to a myriad of impairments, but his back pain is the focus of this appeal. (R. 210).

Plaintiff's back pain began in 2003. (R. 241). A few years later, he was diagnosed with a

1

ruptured disc. (R. 344). He underwent a L3-4 discectomy to remove the damaged portion of his spine on April 25, 2006. (R. 312). At a June 2006 follow up, Plaintiff said that he continued to experience pain and spasms in his lower back, but the pain was not as bad as it had been before his surgery. (R. 343). His surgeon, William Welch, M.D., believed that his recovery was going well and that the pain would continue to subside over time. *Id.* After the initial follow-up, Dr. Welch referred Plaintiff to physical therapy ("PT"). *Id.* Plaintiff only attended six PT sessions, however, cancelling four others and failing to show for one because he was either "out golfing" or could not get a ride (Plaintiff has had four DUI convictions, and so he does not have a driver's license). (R. 236, 358). He was discharged from PT on July 17, 2006, due to his non-compliance and lack of attendance. (R. 356, 358). At his last session on July 5, Plaintiff rated his pain at 3/10, and an examination showed full active range of motion of the lumbar spine, with 4/5 strength. (R. 358).

Following Plaintiff's time in PT during the summer of 2006, there is a gap in the record, until March 20, 2008, when he underwent a physical with his primary care physician, Gerald Kahler, M.D., following his release from jail. (R. 350). Plaintiff complained of continuing back pain and claimed that the 2006 surgery failed to provide him any relief. *Id.* He had been taking ibuprofen to manage the pain. *Id.* Dr. Kahler noted that Plaintiff's "lumbar spinous processes" were tender, and, in terms of range of motion, Plaintiff had 50° of flexion, 15° of extension, and 15° of lateral motion. (R. 351). He had normal stability, strength, and tone in his lower extremities. *Id.* Dr. Kahler prescribed Anaprox-DS and Methocarbamol for Plaintiff's pain. *Id.* Although Plaintiff was instructed to follow up in six weeks, there is no indication that he did so.

Three years later, Plaintiff returned to Dr. Kahler's office complaining that his back still bothered him, especially when bending over and sitting. (R. 349). While Ibuprofen helped to

alleviate the pain, he hadn't taken any in four months. *Id.* According to Dr. Kahler, Plaintiff had full range of motion and normal muscle strength, though his back was tender in the area of the incision at L3-4. *Id.* Straight leg tests were negative. *Id.* Plaintiff was prescribed Diclofenac Sodium and Cyclobenzaprine and advised to follow up as needed. *Id.*

Plaintiff returned to Dr. Kahler on September 27, 2011, for a comprehensive physical examination. (R. 432). He complained that his left leg had been going numb and affecting his ability to stand. *Id.* He also reported constant pain in his back, which had become more problematic since he quit drinking alcohol. *Id.* Excedrin, which he was taking eight times a day, seemed to help, though. *Id.* On examination, Plaintiff displayed normal gait; satisfactory-to-full range of motion in his neck and spine; adequate strength with normal stability in his neck; normal stability, strength, and tone in his spine; and full range of motion with normal stability, strength, and tone in his extremities. (R. 434). Dr. Kahler diagnosed Plaintiff with low back pain and degenerative disc disease with myelopathy and prescribed Flexeril, Excedrin, and Diclofenac Sodium. *Id.* He was also referred back to PT. *Id.*

Plaintiff attended nine PT sessions from September 29, 2011, to October 27, 2011. (R. 412). When he was discharged, he displayed 50° of flexion, 18° of extension, 30° of right side bending, and 25° of left side bending. *Id.* Straight leg raises tests were positive. *Id.* In addition, Plaintiff scored a 36 percent on the Oswestry Disability Index ("ODI"), which, according to his physical therapist, "indicate[d] an increase in function with his [activities of daily living]." *Id.* Plaintiff nonetheless denied any change in his symptoms. *Id.*

When Plaintiff followed up with Dr. Kahler in April 2012, he reported that he continued to suffer lower back pain. (R. 429). He described experiencing stiffness and a decreased range of motion, as well. *Id.* Overall, though, he said the symptoms were "moderate in severity." *Id.* Upon

3

examination, Plaintiff showed a full range of motion and straight leg raise tests were negative. *Id.* Dr. Kahler restarted him on Cyclobenzaprine and also prescribed Tramadol. (R. 430).

Dr. Kahler saw Plaintiff again a month later, and he still complained of lower back pain and left leg numbness. (R. 426). He said that the pain was exacerbated when he bent "over a fender to work" or when was lying "under a car." *Id.* He also reported that it hurt to sit or walk for long periods of time. *Id.* Plaintiff was continued on each of his medications and once again referred to PT. (R. 426).

Plaintiff attended five physical therapy sessions between May 22, 2012, and June 5, 2012. (R. 406). By the time of his discharge, his range of motion and strength had improved and his perception of pain had fluctuated. *Id.* However, although his pain decreased following therapy, it returned when he tried to do other activities. *Id.* As a result, his physical therapist determined that he had only made minimal progress toward his goals. *Id.*

On the same date he was discharged from PT, Plaintiff followed up with Dr. Kahler. (R. 425). He described experiencing a "severe dull aching" pain in his lower back, which radiated down his left leg. *Id.* He said the pain was aggravated by bending, twisting, and standing. *Id.* Upon examination, Plaintiff showed 20° of trunk extension, 90° of lumbar spine flexion, 45° right rotation, and 45° left rotation. *Id.* Straight leg raises were positive at 45° on the left side and 90° on the right side. *Id.*

On June 16, 2012, Plaintiff underwent an x-ray of his lumbar spine. (R. 411). The x-rays showed that the disc height at L4-5 was "borderline but unchanged from the prior study" in July 2005. *Id.* Otherwise, the examination was normal. *Id.*

Three days later, Plaintiff returned to Dr. Kahler's office for their last recorded visit. (R. 424). Plaintiff complained that his lower back pain continued and asked to try a TENS unit. *Id.*

His range of motion was the same as it had been two weeks earlier, but bilateral straight leg raise testing was negative. *Id.* Dr. Kahler ordered an MRI of Plaintiff's spine and referred him to a pain management clinic. *Id.* The results of the MRI showed mild diffuse disc bulging at L3-4, mild hypertrophic change, and minimal foraminal narrowing. (R. 438). Meanwhile, at L4-5, there was minimal disc bulging and mid facet degerenative change, leading to mild bilateral foraminal narrowing. *Id.*

  B.  **Procedural History**

Plaintiff protectively filed applications for DIB and SSI on August 15, 2011. His applications were denied at the administrative level. On February 28, 2013, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Brian W. Wood. He was represented by counsel and testified at the hearing, as did an impartial vocational expert ("VE"). On April 16, 2013, the ALJ issued a decision that denied Plaintiff's applications for benefits. The ALJ's decision became the final decision of the Acting Commissioner on August 7, 2014, when the Appeals Council denied Plaintiff's request for review. Plaintiff then filed this action for judicial review of the ALJ's decision. The parties' cross-motions for summary judgment followed.

**III.**  **Legal Analysis**

  A.  **Standard of Review**

The Act strictly limits the Court's ability to review the Commissioner's final decision. 42 U.S.C. § 405(g). "This Court neither undertakes a de novo review of the decision, nor does it re-weigh the evidence in the record." *Thomas v. Massanari*, 28 F. App'x 146, 147 (3d Cir. 2002). Instead, the Court's "review of the Commissioner's final decision is limited to determining whether that decision is supported by substantial evidence." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). If the Commissioner's decision is supported by substantial evidence, it is

conclusive and must be affirmed. 42 U.S.C. § 405(g). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla but less than a preponderance of the evidence. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010). Importantly, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).

B. **Sequential Evaluation Process**

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1). When deciding whether a claimant is disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work that exists in significant numbers in the national economy. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

C. **Discussion**

Following the five-step sequential evaluation process, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since September 10, 2005. At step two, the ALJ

found that Plaintiff's degenerative disc disease with radiculopathy, gastroesophageal reflux disease, depression, PTSD, anxiety, borderline personality disorder, and alcohol abuse are severe impairments. At step three, however, the ALJ concluded that none of these impairments rose to the level of any of the Listed Impairments. So prior to proceeding to the next step of the sequential evaluation process, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that he retained the ability to perform light work with various additional physical and mental limitations. The ALJ proceeded to find that Plaintiff is not disabled at the fifth step of the sequential evaluation process based on the VE's testimony that there are jobs existing in significant numbers in the national economy that someone of Plaintiff's age, education, experience, and RFC could perform: bench assembler; sorter; and inspector/hand packer. The ALJ also identified three sedentary jobs that Plaintiff could perform: ticket counter; final assembler; and addressor clerk.

Plaintiff raises two arguments in support of his motion for summary judgment. These arguments will be addressed *seriatim*.

1. **Substantial evidence supported the ALJ's RFC finding.**

Plaintiff first takes issue with the ALJ's RFC finding, arguing that it is not supported by substantial evidence because there was no medical opinion in the record regarding Plaintiff's physical impairments. In Plaintiff's view, an ALJ can *never* review and interpret medical records and arrive at his own RFC finding unaided by an opinion from a physician as to a claimant's functional capacity. Plaintiff says that this rule is grounded in the Court of Appeals' decision in *Doak v. Heckler*, 790 F.2d 26 (3d Cir. 1986), and cites a number of district court cases from this Circuit – including some from this Court – that have purportedly adopted it, *see, e.g.*, *Biller v. Colvin*, 962 F. Supp. 2d 761 (W.D. Pa. 2013).

Plaintiff is correct that the record is devoid of any medical opinions as to his physical impairments. However, his reliance on *Doak* and the other cases cited in his brief for the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided. As Judge Bloch has astutely explained, *Doak* "does not, as Plaintiff suggests, hold that an ALJ's RFC findings must be based on a particular medical opinion . . . ." *Doty v. Colvin*, No. CIV.A. 13-80-J, 2014 WL 29036, at *1 n.1 (W.D. Pa. Jan. 2, 2014). Rather, in *Doak*, "[t]he Third Circuit did nothing more than make a substantial evidence finding in light of a limited record . . . and subsequent Third Circuit case law confirms this understanding." *Id.* That subsequent case law makes clear that "[a]lthough reliance on State consultants' reports and treating physicians' opinions is common and ALJs are required to consider any existing State consultant reports, the regulations do not require ALJs to seek outside expert assistance." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1519, 404.1527(e), 404.1527(f), 404.1546(c); SSR 96-5P, 1996 WL 374183 (S.S.A. July 2, 1996)); *see also Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."). Indeed, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." *Id.* "Consistent with this later case law, *Doak* does not prohibit the ALJ from making an RFC assessment even if no doctor has specifically made the same findings and even if the only medical opinion in the record is to the contrary." *Doty*, 2014 WL 29036, at *1 n.1 (citing *Hayes v. Astrue*, No. CIV.A. 07-710, 2007 WL 4456119, at *2 (E.D. Pa. Dec. 17, 2007)).

The erroneous reading of *Doak* adopted by various courts throughout this Circuit seems to have originated in the district court's decision in *Chandler*, 2011 WL 1743313, at *1. The district court in that case cited *Doak* in support of the following proposition: "rarely can a

decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant."[1] *Id.* It proceeded to remand the case to the ALJ because "there was no timely and relevant assessment of the functional capabilities of Plaintiff from a physician and the bare medical records and other non-medical evidence were insufficient for the [ALJ] to conclude" that the claimant could perform sedentary work. *Id.* at *2. On appeal, however, the Third Circuit Court of Appeals reversed the district court's decision. *Chandler*, 667 F.3d at 362. The Court of Appeals did not just reverse the district court's decision, though. It also specifically rejected the district court's conclusion "that the ALJ had reached its decision on its own improper lay opinion regarding medical evidence." *Id.* Quite

---

1. In addition to *Doak*, the district court in *Chandler* purported to find support for its reasoning in a practice treatise and two cases from the Southern District of New York. *Chandler*, 2011 WL 1743313, at *1-2 (citing Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law and Procedure in Federal Courts*, § 3.47 (2011); *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000); *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)). These sources provide a shaky foundation for the court's reasoning. The only authority cited in the portion of the treatise quoted by the district court in *Chandler* – which has been repeated in subsequent district court cases – is a district court case from the Southern District of New York. Kubitschek & Dubin, *Social Security Disability Law and Procedure in Federal Courts*, § 3.47 (citing *West v. Bowen*, 656 F. Supp. 664 (S.D.N.Y. 1987)). What is more, the treatise does not even go so far as to suggest that an ALJ is prohibited from making an RFC finding whenever a medical source has not offered an opinion as to a claimant's functional abilities – the proposition for which the district court in *Chandler* cited it. To the contrary, citing a line of cases from the First Circuit, the authors actually acknowledge an ALJ is not "precluded from rendering common-sense judgments about functional capacity based on medical findings . . . ." *Id.* (quoting *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990)). The two cases from the Southern District of New York on which the district court in *Chandler* relied likewise must be placed in context. Both cited the First Circuit's decision in *Rivera-Torres v. Secretary of Health & Human Servs.*, 837 F.2d 4, 6–7 (1st Cir. 1988) for the proposition that an ALJ is required to consult a medical opinion when assessing a claimant's RFC. True, language to that effect is found in *Rivera-Torres*, but the First Circuit has since clarified that a medical opinion as to a claimant's functional impairments is not required in every case. *See Gordils*, 921 F.2d at 329. As the court in *Gordils* explained, "if the only medical findings in the record suggested that a claimant exhibited little in the way of physical impairments, but nowhere in the record did any physician state in functional terms that the claimant had the exertional capacity to meet the requirements of sedentary work, the ALJ would be permitted to reach that functional conclusion himself." *Id.*

9

the opposite: the Court of Appeals stressed that an "ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Id.*

Nevertheless, courts in subsequent cases, predominantly in the Middle District but also in this District, have continued to trot out the very same reasoning – in many cases, word-for-word – that the district court employed and the Court of Appeals rejected in *Chandler*. *See, e.g.*, *Kester v. Colvin*, No. 3:13-CV-02331, 2015 WL 1932157, at *2-3 (M.D. Pa. Apr. 21, 2015); *Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *4-5 (M.D. Pa. Mar. 11, 2014); *Troshak v. Astrue*, No. 4:11-CV-00872, 2012 WL 4472024, at *7 (M.D. Pa. Sept. 26, 2012). Although some of these courts have acknowledged *Chandler*, they have attempted to couch the above-quoted language in *Chandler* as dicta that conflicts with the holding in *Doak*. *See, e.g.*, *Gunder v. Astrue*, No. 4:11-CV-00300, 2012 WL 511936, at *15 (M.D. Pa. Feb. 15, 2012); *Kostelnick v. Astrue*, No. 3:12CV901, 2013 WL 6448859, at *5 n.19 (M.D. Pa. Dec. 9, 2013). In reality, however, these courts have read *Doak* too broadly, in effect forcing it into conflict with *Chandler* when no conflict actually exists. As Judge Bloch observed in the *Doty* case, *Doak* simply held that there was no evidence upon which the ALJ could have found that the plaintiff could perform light work since every piece of evidence suggested otherwise;[2] it did not purport to create the *per se* rule advocated by Plaintiff here. It was never cited for that proposition until the district court's

---

2. The record before the ALJ in *Doak* was quite limited, consisting only of the "claimant's testimony, three physicians' reports, and a vocational expert's testimony." *Doak*, 790 F.2d at 28. One of the physician's reports suggested Doak was completely disabled, the second suggested he could do sedentary work, and the third offered no opinion as to his ability to work. *Id.* at 28-29. Yet the ALJ inexplicably found that Doak could perform light work. *Id.* at 27. Not only that, but the ALJ added that there was no evidence to the contrary – even though there very clearly was. *Id.* at 27. On these facts, *Doak* was an easy case for the Court of Appeals. The ALJ provided no explanation whatsoever for his decision to discount the only evidence as to the claimant's impairments and also misrepresented the state of the record. No such thing occurred in this case.

decision in *Chandler*, 2011 WL 1743313, at *1. If *Doak* actually stood for the rule espoused by Plaintiff, the Court of Appeals in *Chandler* would have surely attempted to reconcile its reasoning with that of *Doak*. It had to be aware of *Doak*, as the district court made it a centerpiece of its reasoning. Yet the Court of Appeals said nothing. Its silence is a strong indication that it did not believe that it was breaking any new ground or diverging from any precedent set in *Doak* (or the other cases cited in Plaintiff's brief, which stand for the inarguable proposition that an ALJ cannot substitute his own pseudo-medical judgment for that of a physician). Rather, it was merely acknowledging the well-established rule that RFC is a factual finding that must be made by the ALJ after reviewing all of the evidence in the record. *See Chandler*, 667 F.3d at 362 (citing 20 C.F.R. §§ 404.1546(c), 404.1527(e); SSR 96-5P, 1996 WL 374183). Accordingly, although this Court recognizes that some courts have found that *Chandler* must give way to *Doak* insofar as the two cases conflict, this Court respectfully disagrees that there is a conflict.

Having determined what the ALJ was not required to do – base his RFC on an opinion from a medical source – the Court now must address what *was* required of the ALJ. RFC refers to the most a claimant can still do despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his own limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a).

Upon reviewing the evidence, the ALJ in this case found that Plaintiff can perform light work, so long as he could alternate between sitting and standing every thirty minutes. (R. 24). He also found, as relevant to this appeal, that Plaintiff could never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs; occasionally engage in postural activities; and

occasionally push and pull with his left leg. (R. 24). This finding was supported by substantial evidence. In fact, the ALJ's RFC assessment generously accounted for the limitations credibly established by the evidence of record. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). It also requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983). As the ALJ concluded, Plaintiff was treated conservatively following his 2006 back surgery, with his condition remaining largely unchanged through this period. He often displayed a full range of motion, and although he testified to difficulty standing or walking for long periods of time, the ALJ provided sufficient reasons for concluding that Plaintiff's testimony as to his impairments was not entirely credible.

Even assuming, *arguendo*, that there was not support for the finding that Plaintiff could perform light work, it ultimately would not matter. The VE also identified several positions at the sedentary level that Plaintiff could perform. While it might be arguable that he cannot perform the demands of light work, there is clearly substantial evidence to support a finding that he can perform sedentary work with a sit/stand option. Plaintiff himself indicated in a disability report dated August 24, 2011, that he could lift up to 25 pounds, sit for two hours, and stand for one hour. At the hearing, he clarified that he could not sit for long than 45 minutes before he had to get up and move around. (R. 41). Either way, by his own account, he could meet the requirements of sedentary work with a sit/stand option. *See* 20 C.F.R. § 416.967 (explaining that "[s]edentary work involves lifting no more than 10 pounds at a time" and occasional walking and standing); SSR 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983) (explaining that occasional walking and standing means "no more than about 2 hours of an 8-hour workday," with sitting

accounting for the remaining 6 hours). He also testified that during his last job with Zambelli's Fireworks, which he was required to quit in 2009 because of a failed background check, he had to lift up to 50 pounds. As the ALJ opined, this belied a finding that Plaintiff suffered greater limitations than those found in the ALJ's RFC. So too did the fact that Plaintiff continued to try to repair vehicles, hunt, fish, and play golf well after his alleged onset date. Accordingly, the Court finds that the ALJ's RFC assessment is supported by substantial evidence.

> 2. **The Acting Commissioner did not improperly remove records from the certified copy of the transcript, and remand is not required to address whether the ALJ relied on records of another claimant in deciding Plaintiff's case.**

Plaintiff's second contention is that the Acting Commissioner's decision to "unilaterally . . . remove records" relating to another claimant from the certified copy of the transcript without leave of Court was improper. Pl.'s Br. at 11. While Plaintiff does not dispute that the redacted records do in fact relate to another claimant, he nonetheless argues that the Acting Commissioner should be ordered to file the complete administrative record, including the documents related to the other claimant. Failing that, Plaintiff submits that the matter should be remanded because otherwise this Court cannot determine whether the ALJ's decision is actually based on substantial evidence. This argument fails. Plaintiff has not cited any authority to support the suggestion that the Acting Commissioner was required to seek leave of Court before redacting portions of the administrative record pertaining to someone other than Plaintiff. Perhaps that is not surprising, considering the Acting Commissioner adhered to the Social Security Administration's internal guidance when it redacted the aforesaid documents prior to filing the certified record. Hearing, Appeals and Litigation Law Manuel ("HALLEX") I-4-1-54 (S.S.A.), 1993 WL 643631, at *3 (explaining that if a document in the record pertains to someone other than the claimant and "the evidence does not affect the defensibility of the case," the document

must be redacted, in whole or in part, prior to filing the certified record with the district court). To be sure, HALLEX does not have the force of law, but there is no indication that courts have disapproved of the Administration's practice of redacting irrelevant documents before filing a certified copy of the transcript with the district court. This Court sees no reason to be the first to do so. Therefore, it must decline Plaintiff's request to order the Acting Commissioner to file the documents in non-redacted form. Likewise, it will not remand the case to the ALJ on this basis.

Plaintiff makes one final argument. He contends that there is no indication that the ALJ was aware that certain documents in the record related to another claimant, let alone how much the ALJ may have relied on these documents in reaching his decision. Thus, relying on an unpublished summary order from the Second Circuit Court of Appeals, *Yenik v. Commissioner of Social Security*, 522 F. App'x 65 (2d Cir. 2013), he argues that the matter should be remanded so the ALJ can make it clear that he did not rely on any of these documents in reaching his decision. The Court is not persuaded by Plaintiff's reliance on *Yenik*. First of all, it goes without saying that *Yenik* is not binding on this Court (or even in the Second Circuit for that matter). Not only that, but it is also easily distinguishable from the circumstances in this case. The administrative record in *Yenik* included documents related to "Joseph Yenik, Sr.," but the claimant was actually "Joseph Yenik, Jr." *Id.* Nobody picked up on the discrepancy until the case was appealed to the Second Circuit, including the ALJ, who apparently considered the documents related to "Joseph Yenik, Sr." in rendering his decision. By contrast, while the ALJ in this case did not mention that the record included documents pertaining to another person and said that he had considered the entire record before coming to his decision, it is clear that none of the documents related to another claimant played a part in the ALJ's decision. The ALJ did not cite any of these documents, and the medical records he did cite all clearly relate to Plaintiff, and not someone

else.

This is akin to the situation in *Melle v. Barnhart*, where the Court of Appeals held that to the extent the ALJ may have relied on the records of another person in rendering his decision, the error was harmless. 64 F. App'x 848, 849 (3d Cir. 2003). More specifically, the Court of Appeals explained:

> [t]he ALJ's determination was supported by substantial evidence divorced from any discrepancy between the report relating to the [other person] and the numerous other records pertaining to the Appellant. The [other person's] report was just one of a number of the records reviewed and possibly relied upon by the ALJ in making his determinations.

*Id.* So too in this case – although there is even less of a basis for remanding here because the Court can discern that the ALJ did not rely on any of the documents related to the other claimant in his decision. It is also worth noting that, as in *Melle*, Plaintiff's counsel did not object to the accuracy of the record at the administrative hearing, (R. 36), so "the ALJ was entitled to rely on [Plaintiff's] counsel's assertion as to the accuracy of the record." *Id.* Thus, there is no need to remand the matter to allow the ALJ to undertake a new evaluation of Plaintiff's eligibility for benefits. *Cf., e.g.*, *Smith-Chonko v. Colvin*, No. CIV.A. 12-1301, 2013 WL 3772521, at *2 (W.D. Pa. July 17, 2013) (concluding "that the ALJ's reliance on . . . records [related to another individual] has infected the decision with error that cannot be ignored").

## IV. Conclusion

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges that he faces in seeking gainful employment. However, under the applicable standard of review and the current state of the record, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the Court will **GRANT** the motion for

15

summary judgment filed by the Acting Commissioner and **DENY** the motion for summary judgment filed by Plaintiff. An appropriate Order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC ALLEN CUMMINGS,<br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner<br>of Social Security,<br>Defendant. | 1:14-CV-251-TFM |

## ORDER

**AND NOW**, this 7th day of July 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the Acting Commissioner's MOTION FOR SUMMARY JUDGMENT (ECF No. 9) is **GRANTED**, and Plaintiff's MOTION FOR SUMMARY JUDGMENT (ECF No. 13) is **DENIED**. The Clerk shall docket this case **CLOSED**.

BY THE COURT:

s/ Terrence F. McVerry
Senior United States District Judge

cc: **Kenneth R. Hiller, Esq.**
Email: khiller@kennethhiller.com

**Christian A. Trabold, Esq.**
Email: christian.a.trabold@usdoj.gov

(via CM/ECF)